KERSEY *v.* PHŒNIX INSURANCE CO.

1. Fire Insurance—Arbitration—Disagreement.

　　Where an insurance company, with knowledge of the amount claimed for a loss by fire, demanded an arbitration, and both parties entered into an agreement therefor, it cannot be said that there was not such a disagreement as would justify an arbitration, within a clause in the policy providing therefor in the event of a disagreement as to the amount of loss.

2. Same—Award—Condition Precedent to Suit.

　　Where an insurance policy requires that, when properly demanded, the amount of loss shall be determined by arbitration before suit shall be brought, the necessity of the award is not obviated by a provision that it shall be only *prima facie* evidence.

3. Same—Bad Faith in Selection of Umpire.

　　Bad faith, which will defeat an insurance company's right to insist on an arbitration, will not be inferred from the agreement of its arbitrator to the selection of an incompetent person to act as umpire, where the insured's arbitrator proposed the umpire, and the company's arbitrator acquiesced without knowing of the disqualification.

4. Same—Failure to Agree.

　　An insurance company will not be held responsible for the failure to select an umpire, where there is no evidence that the men proposed for umpire by its arbitrator were not fair and competent men, or that there was not a valid, *bona fide* objection to the men proposed by the arbitrator for the insured.

Error to Lake; McAlvay, J. Submitted October 8, 1903. (Docket No. 23.) Decided November 9, 1903.

*Assumpsit* by Albert Kersey against the Phœnix Insurance Company of Hartford, Connecticut, on a policy of insurance. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Affirmed.

*Charles A. Withey* (*J. E. Richardson*, of counsel), for appellant.

*Russell C. Ostrander*, for appellee.

CARPENTER, J.   February 14, 1902, certain personal property belonging to plaintiff was burned.   This suit is brought to recover on an insurance policy covering said property, issued to plaintiff by defendant.   A verdict was directed for defendant on the ground that arbitration proceedings were pending and undetermined when suit was commenced.   The sole question for our consideration relates to the correctness of this ruling.   The facts are these: The policy—which was a Michigan standard policy—contained these provisions:

" In the event of disagreement as to the amount of loss, the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and, failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall be *prima facie* evidence of the amount of such loss.   *   *   *

"The loss shall not become payable until sixty days after the notice, ascertainment, estimate, and satisfactory proof of the loss, herein required, have been received by this company, including an award by appraisers when appraisal has been required.   *   *   *

" No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements, nor unless commenced within twelve months next after the fire."

After considerable correspondence between the parties (plaintiff's attorney acting for his client in conducting said correspondence), articles of arbitration were signed on the 26th of August, 1902.   In those articles it was stated that:

"W. E. Williams and John Rowson shall appraise the

sound value and the loss upon the property damaged or destroyed by fire: * * * *Provided,* the said appraisers shall first select a competent and disinterested umpire, who shall act with them in the matters of difference only. The award of any two of them, made in writing, and in accordance with this agreement, shall be *prima facie* evidence of the amount of such sound value and loss."

It appears that Williams was the selection of plaintiff and Rowson of defendant. Williams and Rowson met on August 27th, and appointed one A. J. Auer umpire. Auer at once refused to act, on the ground that he had property destroyed in the same fire that occasioned plaintiff's loss. Thereupon Williams and Rowson again met, either on August 27th or 28th. In this conference they failed to agree upon a third man, and Rowson returned to his home in Grand Rapids. Williams saw Rowson two or three days later in Grand Rapids, and "spoke to him about agreeing about a third arbitrator, or giving the matter up." Rowson wanted to wait a few days longer. On the 8th of September Williams withdrew as arbitrator. On that same day—namely, September 8th—plaintiff wrote defendant that Mr. Williams declined to act longer as arbitrator "for the present, and under the present arrangement and association. * * * I do not think you acted in good faith in regard to the arbitration. Unless you take further steps to proceed with the arbitration immediately, I shall commence suit as soon as I can get to it. * * * Of course, we are open to offer of settlement, if reasonable, at any time." Defendant answered this letter on September 9th, insisting that the arbitration arrangement be carried out, and suggesting that it would prejudice no one if plaintiff made an offer of compromise. Plaintiff answered this letter September 10th, offering to take 75 per cent. of his claim in settlement, adding:

" You will please note, however, that if in the *interim* you desire to go on with the arbitration or proceedings for an award as to the amount of loss, we are willing to meet you at any time, and, if necessary, select a new arbitrator. We do not decline to arbitrate, but we do claim that we

are not obliged to dally along indefinitely in this kind of a way."

Defendant replied September 12th by a reference to its letter of the 9th.   It again insisted upon the arbitration, and declined to accept the offer of compromise.   September 17th defendant formally requested plaintiff to name another arbitrator in place of Mr. Williams, calling his attention to the provisions of the policy respecting the award.   No answer was made to this, but on the 30th of September plaintiff commenced this suit.

Several reasons are urged why this suit could be commenced notwithstanding the pendency of the arbitration proceedings.

1. It is said that there was no disagreement as to the amount of the loss, and therefore that defendant had no right to an award by appraisers.   We cannot agree with this contention.   It appears that defendant knew the amount claimed by plaintiff.   Its demand for the arbitration, with this knowledge, indicated its dissatisfaction with and unwillingness to pay that amount.   The fact that both parties entered into the arbitration, too, is conclusive proof, in our judgment, that such a disagreement existed as justified the arbitration.   If plaintiff had desired to continue negotiation to fix the amount without resorting to arbitration, the time to have indicated that desire was before assenting to the arbitration.   We cannot agree with plaintiff's counsel that the arbitration entered upon was a common-law arbitration, and therefore no bar to the suit.   The language of the arbitration agreement clearly indicates that it was the arbitration referred to in the insurance policy.

2. It is insisted that, as the award would only be *prima facie* evidence, it is not a condition precedent to the right to maintain this suit.   In *Chippewa Lumber Co.* v. *Phenix Insurance Co.*, 80 Mich. 116 (44 N. W. 1055), this court decided that an agreement requiring the submission of the amount of the loss to arbitration as a condition pre-

cedent to the bringing of the suit was valid and enforceable. That case differs from the case at bar in this: That the award of the arbitrators there fixed the amount of liability. Here it only affords *prima facie* evidence of that amount. We are referred to no authority which distinguishes that case from the one at bar. It is the manifest intention of the contract to make the arbitration, when properly demanded, a condition precedent to the bringing of suit. The fact that the award is only *prima facie* evidence lessens, but does not destroy, its value as evidence. This does not make the award a mere idle ceremony. It is still of value, and furnishes convincing testimony. We cannot, because its force as testimony is not conclusive, disregard the plain provisions of the policy, and decide that it is not a condition precedent.

3. It is insisted by plaintiff that it may be inferred that defendant was acting in bad faith in the arbitration proceedings; and it has been held that if either party acted in bad faith, so as to defeat the real object of the arbitration, it absolved the other party from compliance therewith. *Uhrig* v. *Insurance Co.*, 101 N. Y. 362 (4 N. E. 745); *Hickerson & Co.* v. *Insurance Cos.*, 96 Tenn., at page 206 (33 S. W. 1041, 32 L. R. A. 172). Can that inference be drawn? Plaintiff contends that it can be drawn from the fact that defendant's arbitrator agreed to the selection of Mr. Auer, an incompetent person, to act as umpire. We cannot agree with this contention. Plaintiff's arbitrator proposed Mr. Auer as an umpire, and defendant's arbitrator acquiesced. It is claimed that Mr. Auer was incompetent to act, because he had sustained a loss by the same fire that destroyed plaintiff's property. If this rendered Mr. Auer an incompetent arbitrator,—a point which we do not decide,—there is no evidence from which it can be inferred that the defendant's arbitrator knew of the disqualification.

It is also claimed by plaintiff that the failure of the two arbitrators to agree upon a competent and disinterested umpire was entirely due to the unreasonable conduct of

Rowson, defendant's arbitrator, and that this warranted an inference of bad faith.    The evidence shows this, and only this:    That defendant's arbitrator declined to accept as umpire any of the dozen or fifteen business men of Reed City suggested by plaintiff's arbitrator, and that most of the persons proposed by him lived out of town, and were for that reason rejected by plaintiff's arbitrator, and that an umpire willing to act was never selected. There was no evidence that the men proposed as umpire by defendant's arbitrator were not fair and competent men; nor was there any evidence that there was not a valid, *bona fide* objection to those proposed by plaintiff's arbitrator.    We cannot, therefore, hold defendant responsible for the failure to select an umpire.    We agree with the trial judge that:

"The conduct of the arbitrator of the company, or the conduct of the company at the time of the arbitration, or the delay of the arbitrators to agree, between the 27th day of August and the 8th day of September, under the circumstances of this case, upon another umpire, was not such conduct as would warrant the plaintiff in withdrawing from that arbitration, abandoning it, and claiming that the company had waived its rights under that contract for an arbitration, and had abandoned the arbitration."

It follows, therefore, that the judgment of the court below should be affirmed.

The other Justices concurred.